# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TERRI ENDICOTT, | * |
| Plaintiff, | * |
| | Civ. Action No. RDB-18-3824 |
| v. | * |
| VIDEO PIPE SERVICES, INC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Terri Endicott ("Plaintiff" or "Endicott"), pursues this action against Defendant Video Pipe Services, Inc., ("Defendant" or "Video Pipe").[1] Endicott was struck by a pick-up truck owned by Video Pipe and operated by a Video Pipe employee and asserts a single count of motor vehicle negligence against Video Pipe under vicarious liability principles. (Compl. ¶¶ 5-6, ECF No. 1-2.) Video Pipe filed a Third-Party Complaint against employees, Robert O. Smith, II and David Clark Smith ("Third Party Defendants"), alleging that the employees negligently used the company vehicle in an unauthorized manner. (ECF No. 16.) Presently pending is Defendant Video Pipe Services, Inc.'s Motion for Summary Judgment. (ECF No. 50.)

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant Video Pipe Services, Inc.'s Motion for Summary Judgment (ECF No. 50) is GRANTED.

---

[1] In its corporate disclosure statement, Defendant notes that its name has changed to Mobile Dredging & Video Pipe, Inc by virtue of merger. (ECF No. 2.)

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). On January 13, 2016, plaintiff was struck from behind by a truck owned by Video Pipe and operated by third-party defendant, Robert Smith. (Pl.'s Opp'n at 2, ECF No. 51). The collision occurred at approximately 6:00 p.m. while Smith was on his way home from visiting a friend in Crofton, Maryland. (*Id.* at 2-3; July 10, 2019 Robert Smith Dep. Tr. at 16:11-12, ECF No. 50-3.) Smith testified in his deposition that Video Pipe provided him with a company owned pick-up truck to drive to and from his house in Edgewater, Maryland and his job site in Washington, D.C.[2] (June 13, 2019 Robert Smith Dep. Tr. at 34:20-35:12, ECF No. 50-2.) The truck, internally known as the "P68" at Video Pipe, was equipped with GPS monitoring that records location coordinates. (Joseph A. Harris Aff. ¶¶ 2-3, ECF 50-4; Ryan Schmidt Aff. ¶¶ 2-3, ECF No. 50-5.)

According to Robert Smith, the route he would normally take home from Washington, D.C. to Edgewater, Maryland varied depending on traffic, but typically took approximately an hour and a half in normal, rush hour traffic. (June 13, 2019 Robert Smith Dep. Tr. at 51:18-20, ECF No. 50-2.) Smith further testified that he normally would clock out around 3:00 p.m., but would often stay at the work site after clocking out to get additional work done. (July 10, 2019 Robert Smith Dep. Tr. at 6:5-8, ECF No. 50-3.) On January 13, 2016, GPS records

---

[2] Video Pipe denies that it provided Robert Smith with a company vehicle, arguing that his father, David Smith, allowed him to use the truck without authorization. However, for purposes of this motion, Video Pipe assumes, *arguendo*, that it gave Robert Smith permission to use its vehicle and to drive it to and from work. (ECF No. 50-1.)

indicate that Smith started the company truck at 3:41 p.m. and left the job site at 4:04 p.m.[3] (Harris Aff. Exhibit A, ECF No. 50-4.) Robert Smith admits, and GPS records confirm, that he did not go home after leaving the job site. (*Id*; June 13, 2019 Robert Smith Dep. Tr. at 55:14-20, ECF No. 50-2.) Instead, Smith drove to visit a friend's house in Crofton, Maryland. (June 13, 2019 Robert Smith Dep. Tr. at 55:14-20, ECF No. 50-2.) Smith admits that the purpose of this trip was to visit his friend's newborn baby, get keys to a vehicle parked at his house, and collect money that his friend owed him. (*Id.* at 57:7-10.) He testified that this was a "personal" use of Video Pipe's vehicle and that he was aware that Video Pipe's handbook on Policies and Rules prohibited the use of company vehicles for personal use. (July 10, 2019 Robert Smith Dep. Tr. at 43:6-19, ECF No. 50-3; Schmidt Aff. Exhibit A, ECF No. 50-5.)

Smith testified that his normal route home from his job site in D.C. was Route 295 to Interstate 495 to Maryland Route 214, or, alternatively, Interstate 495 to Route 50 to Maryland Route 665 to Maryland Route 2. (June 13, 2019 Robert Smith Dep. Tr. at 49:10-20, ECF No. 50-2.) However, on the day of the collision, GPS records confirm that Smith left the job site at 4:04pm and proceeded north towards Bowie, Maryland via Crain Highway. (Harris Aff. Exhibit A, ECF No. 50-4.) Smith then arrived at the 2500 block of Nantucket Drive in Crofton, Maryland at 5:04pm. (*Id.*) While Smith does not remember how long he was at his friend's house, GPS records indicate that he left the 2500 block of Nantucket Drive at 5:20pm and began proceeding towards Edgewater. (Harris Aff. Exhibit A, ECF No. 50-4.) Later that evening, while traveling southbound on Solomon's Island Road, Smith struck Plaintiff's

---

[3] The GPS records contained in Exhibit A are recorded in Coordinated Universal Time (UTC). The times referenced have been converted to Eastern Standard Time.

vehicle. (July 13, 2019 Robert Smith Dep. Tr. at 16, ECF No. 50-3.) Smith was terminated by Video Pipe the following day for failing to take a mandatory drug test. (*Id.* at 39:4-21.)

Plaintiff filed a Complaint against Defendant in the Circuit Court for Anne Arundel County for motor vehicle negligence. (Compl., ECF No. 1-2.) On December 12, 2018, Defendant removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) On February 7, 2019, Defendant filed a Third-Party Complaint against Robert O. Smith, II and David Clark Smith alleging that the employees negligently used the company vehicle in an unauthorized manner. (ECF No. 16.) Third-Party Defendants filed Motions to Dismiss asserting that Video Pipe's Complaint failed to state a claim and was barred by the Maryland statute of limitations. (ECF Nos. 25, 26.) This Court denied their Motions to Dismiss, finding that Video Pipe sufficiently alleged a negligence claim against Robert O. Smith, II and David Clark Smith and that the Complaint was not time barred because the running of the statute of limitations would commence upon entry of a judgment against Video Pipe. (ECF No. 47.)

On December 2, 2019, Video Pipe filed the presently pending Motion for Summary Judgement. (ECF No. 50.) Endicott opposed the Motion (ECF No. 51) and Third Party Defendants supported the Motion, arguing that Defendant Video Pipe was entitled to summary judgment (ECF No. 52).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A

material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

**ANALYSIS**

Video Pipe seeks summary judgment in its favor on Endicott's sole claim of motor vehicle negligence. Plaintiff alleges that the negligence of Video Pipe's employee was the proximate cause of the car accident giving rise to this action. (Compl. ¶ 5, ECF No. 1-2.) She further asserts that Defendant is liable for its employee's negligent actions because the employee was driving a vehicle owned and controlled by the Defendant. (*Id.*) Defendant argues that it cannot be held vicariously liable for its employee's negligence because, at the time of the collision, the employee was not acting within the scope of his employment. (ECF No. 50-1.)

Under Maryland law,[4] it is well-established that an employer is vicariously liable for the negligent acts of its employee when those acts are committed within the scope of employment. *Oaks v. Connors,* 339 Md. 24, 30, 660 A.2d 423, 426 (1995). Generally, "[a]n employee's acts fall within the scope of his employment if 'they were done by the [employee] in furtherance' of the employer's business, 'and were such as may fairly be said to have been authorized by him.'" *Wood v. Walton,* 855 F. Supp. 2d 494, 499 (D. Md. 2012) (quoting *Sawyer v. Humphries,* 322 Md. 247, 255, 587 A.2d 467, 470 (1991)); *see also Germain v. Norris,* 536 F. Supp. 2d 585, 590 (D. Md. 2008). "An act is 'authorized' if it is 'incident to the performance of the duties entrusted to [the employee] by the [employer], even though in opposition to his express and positive orders.'" *Id.*

---

[4] In a diversity jurisdiction case, the Court "must apply the substantive law of the forum state." *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007). In tort cases, Maryland courts follow the rule of *lex loci delicti*, applying the law of the place where the injury occurred. *Lewis v. Waletzky,* 422 Md. 647, 31 A.3d 123, 129 (2011). Endicott was injured in Maryland, so Maryland law applies.

Maryland courts examine various factors to determine when an employee's actions are within the scope of an employee's employment. The Court of Appeals of Maryland has explained:

> To be within the scope of the employment the conduct must be of the kind the [employee] is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the [employer].

*Sawyer*, 322 Md. 247 at 255 587 A.2d at 471 (quoting *E. Coast Freight Lines v. Mayor and City Council of Baltimore,* 190 Md. 256, 285, 58 A.2d 290, 304 (1948)). The Court emphasized that "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Sawyer,* 322 Md. at 256-257, 58 A.2d at 471.

In tort cases involving automobiles, an employer may be vicariously liable if the employee is "engaged at the time in furthering the [employer's] business" and:

> the [employer] expressly or impliedly consents to the use of the automobile, and had the right to control the [employee] in its operation, or else the use of the automobile was of such vital importance in furthering the [employer's] business that his control over it might reasonably be inferred.

*Oaks,* 339 Md. at 30, 660 A.2d at 426. When, as here, an employee is authorized to use an automobile for business purposes, and the employee departs or deviates from a typical or prescribed route, courts classify such deviations into two categories: "detours" and "frolics." *Karangelen v. Snyder*, 40 Md. App. 393, 396-397, 391 A.2d 474, 476 (Md. Ct. Spec. App. 1978). When facts establish that a deviation amounted only to a detour, courts "may determine as a matter of law that [the employee] is still executing the master's business." *Id.* However, when

7

facts show that the "deviation is very marked and unusual" it may amount to a "frolic" outside the employee's scope of employment. *Id.* Courts will consider factors such as "the time and place of the deviation, its extent with relation to the prescribed route, whether its motivation is in part to serve the master, and whether it is the usual sort of deviation for servants on such a job." *Id.* at 397, 476.

*National Trucking & Storage v. Durkin* is instructive in cases involving such deviations. 183 Md. 584, 589–90, 39 A.2d 687, 689 (1944). In *Durkin*, the Court of Appeals of Maryland held as a matter of law that an employer's chain of liability was severed when its truck driver failed to return to Washington, D.C., as instructed, after picking up a load of sugar in Baltimore, Maryland and was subsequently involved in a collision. *Id.* The Court reasoned that "evidence clearly shows a departure from the master's business" when the employee "took the tractor for the purpose of procuring a meal and other entertainment in Baltimore, in disregard of their instructions to return to Washington." *Id.*

In this case, it is undisputed that Robert Smith was authorized to drive Video Pipe's vehicle to and from work. (ECF No. 50-1 at 2 n.2; ECF No. 51 at 2.) However, the record also clearly establishes that Smith deviated from his typical routes home in order to attend to personal business. The transcripts from Robert Smith's deposition, the GPS data from the truck Smith was driving, and the "Company Policies and Rules" attached as an exhibit to the Affidavit of Ryan Schmidt, show that Robert Smith's deviation in his route home was not in furtherance of Video Pipe's business and was an unauthorized personal use of Video Pipe's vehicle. (*See* June 13, 2019 Robert Smith Dep. Tr., ECF No. 50-2; July 10, 2019 Robert Smith

8

Dep. Tr., ECF No. 50-3; Joseph A. Harris Aff. Exhibit A; ECF No. 50-4; Ryan Schmidt Aff., ECF No. 50-5.)

Robert Smith admitted that his deviation on January 13, 2016 was for his own personal purposes. (July 10, 2019 Robert Smith Dep. Tr. at 43:17-19, ECF No. 50-3.) He testified that he normally took Route 295 to Interstate 495 to Maryland Route 214, or alternatively Interstate 495 to Route 50 to Maryland Route 665 to Maryland Route 2 to get home from his jobsite in Washington, D.C. (June 13, 2019 Robert Smith Dep. Tr. at 49:10-20, ECF No. 50-2.) However, he testified, and GPS records confirm, that on the evening of the collision, he did not take one of his normal routes home. (*Id.*; Joseph A. Harris Aff. Exhibit A, ECF No. 50-4.) Instead, he drove north towards Crofton for the purpose of visiting with his friend's newborn baby, retrieving keys from his friend, and collecting a debt his friend owed him. (July 10, 2019 Robert Smith Dep. Tr. at 13:5-18, ECF No. 50-3; Harris Aff. Exhibit A, ECF No. 50-4.) At this point, Smith was "independent" and "disconnected" from his master's business. *See McDowell, Pyle & Co.,* 164 Md. at 170, 164 A. at 149 ("[W]here the deviation is not disputed, [the question] is whether the driver of the appellant's automobile had so far stepped aside from and abandoned his employer's business as to make him, at the time of the accident, independent of his master's business, and wholly disconnected with it.") Indeed, such a deviation was a frolic, thereby severing Video Pipe's liability. *See McDowell, Pyle & Co. v. Magazine Serv.,* 164 Md. 170, 170 164 A. 148, 148 (1933) ("Whether the deviation of route affects the question of liability depends on whose business is being pursued at the time").

Plaintiff proffers that Video Pipe may have allowed, either directly or indirectly, its employees to stop on their way home to "attend to [ ] individual matters." (Pl.'s Opp'n, ECF

9

No. 51.) However, Plaintiff has failed to produce specific facts, through deposition testimony, affidavits, relevant documents or otherwise, to demonstrate that there was any genuine issue of material fact relating to Defendant's authorization for Smith to drive Defendant's vehicle for personal reasons on his way home. The Court of Appeals of Maryland examined similar facts in *State v. C.J. Benson & Company*, where an employee driving his employer's automobile was involved in an accident while driving back to work from lunch. 129 Md. 693, 693, 100 A. 505, 506 (1917). Similar to the facts present here, the employee admitted that he did not have authority to use the employer's car for his own business or pleasure and was instructed to return the car directly to his employer's garage after the completion of his employment duties. *Id.* The Court explained that while "[i]t is open to very serious doubt whether the permissive use by a servant for his own business of a machine of the master is sufficient to render the master liable," the Court did not need to determine that point "because no evidence whatever that any such permission was given, or any evidence tending to contradict the positive evidence to the contrary." *State v. C.J. Benson & Co.,* 129 Md. at 693, 100 A. at 507.

Here, Video Pipe has presented uncontradicted evidence through testimony, GPS data, and work place policies that support the inference that employees were prohibited from using company vehicles for personal use. *See Syminton v Sipes,* 121 Md. 313, 313 88 A. 134, 136 (1913) ("The master is not liable if the servant has abandoned his obligations, and is doing something not in compliance with the express or implied authority given, and is not acting in pursuance of the general purpose of his occupation or in connection with the doing of the master's work"); *see also Wagner*, 179 Md. at 470, 20 A.2d at 167. Summary judgment is appropriate in favor of Defendant because Plaintiff has failed to submit any evidence supporting her position

that Smith was acting within the scope of his employment or otherwise authorized to deviate from his route home to stop at a friend's house. *See Wood v. Walton*, 855 F. Supp. 2d 494, 502-03 (D. Md. 2012) (granting summary judgment in favor of employer on vicarious liability claim when employee used company car to drive to a bar because this deviation "was neither incident to [employee's] duties nor conduct he was hired to perform").

In sum, this Court finds as a matter of law that Robert Smith was not acting within the scope of his employment at the time of the accident. Thus, Video Pipe is not vicariously liable for Robert Smith's allegedly negligent conduct. Accordingly, Defendant Video Pipe Services, Inc.'s Motion for Summary Judgment (ECF No. 50) is GRANTED. In addition, because Defendant's Third-Party Complaint (ECF No. 16) is contingent on finding Video Pipe liable, Defendant's Third-Party Complaint will be DISMISSED AS MOOT.

## CONCLUSION

For the foregoing reasons, the Defendant Video Pipe Services, Inc.'s Motion for Summary Judgment (ECF No. 50) is GRANTED. Defendant's Third-Party Complaint (ECF No. 16) is DISMISSED AS MOOT.

A separate Order follows.

Dated: February 28, 2020

_____/s/_____
Richard D. Bennett
United States District Judge